UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PATRICK NOONEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 1:17-cv-01519-SGC |
| TAYLOR PALLETS AND RECYCLING, et al., | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER[1]

This matter arises out of a January 7, 2016 traffic accident in Talladega County, Alabama. (Doc. 1). Presently pending is the motion for partial summary judgment filed by the defendants, Taylor Pallets and Recycling, Inc., and Martin Paz-Plata. (Doc. 30). The motion is fully briefed and ripe for adjudication. (Docs. 31-33, 35, 37). As explained below, the motion is due to be granted.

## I.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] The parties have consented to dispositive magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## II. MOTION TO STRIKE CONSTRUED AS OBJECTIONS

Following the plaintiff's opposition to the motion for summary judgment, the defendants filed a motion to strike. (Doc. 34). The plaintiff did not file any opposition to the motion to strike, and the time to do so has expired. (*See* Doc. 11 at 5). On January 13, 2020, the court entered an order terminating the motion to

strike and noting the grounds asserted in the motion would be treated as objections to the admissibility of evidence attached to the plaintiff's opposition. (Doc. 36). Thus construed, the defendants object to two exhibits attached to the plaintiff's opposition: (1) the Alabama Uniform Traffic Crash Report ("Accident Report") concerning the accident (Doc. 32-1; Doc. 37-1); and (2) a report compiled by a third party, HireRight, showing six traffic violations issued to Paz-Plata (the "HireRight Report"). (Doc. 32-5; Doc. 37-5). As explained below, the defendants' objections are **SUSTAINED**, and this memorandum opinion does not consider these exhibits.

A. <u>**Accident Report**</u>

The defendants object to the admissibility of the Accident Report as hearsay. (Doc. 34 at 2-5). Under Alabama law, accident reports may not be used as evidence "in any trial, civil or criminal, arising out of an accident." ALA. CODE § 32-10-11; *see Mainor v. Hayneville Tel. Co.*, 715 So. 2d 800, 802 (Ala. Civ. App. 1997) ("Section 32-10-11 provides that no Alabama Uniform Accident Report shall be used as evidence in any civil or criminal trial arising out of an accident."). The Alabama rule applies in this case, which is premised on diversity jurisdiction. FED. R. EVID. 501; *see Cardona v. Mason & Dixon Lines, Inc.*, 737 F. App'x 978, 981-82 (11th Cir. 2018) (per curiam). Accordingly, the Accident Report is inadmissible here. *Quarles v. Tenn. Steel Haulers, Inc.*, No. 17-0308, 2019 WL

758616, at *7 (M.D. Ala. Feb. 20, 2019) (finding accident report inadmissible at summary judgment stage).

### B. HireRight Report

Next, the defendants object to the admissibility of the HireRight Report, purporting to show traffic citations Paz-Plata received during the seven years preceding the accident at issue here. (Doc. 34 at 5-11). The document was prepared by HireRight—a company which runs background checks on drivers—for another trucking company at which Paz-Plata had applied. (Doc. 32-5; Doc. 37-5; *see* Doc. 32 at 7, n.1). Defendants object to the HireRight Report as inadmissible hearsay.[2] (Doc. 34 at 5-11). The HireRight Report shows six moving violations: four issued in California from 2010 through 2013, and two issued in Georgia in 2013. Defendants take particular issue with the four California citations. Paz-Plata admitted to receiving the two traffic citations in Georgia but testified he only received two tickets in California—one for speeding and one failing to stop at scales. (*Id.* at 8; Doc. 32-2 at 14; Doc. 37-2 at 14).

The plaintiff offers the HireRight Report to show Paz-Plata received the traffic tickets reflected therein. Accordingly, the HireRight Report is inadmissible hearsay unless it falls under an exception. The defendants contend the HireRight

---

[2] Defendants also contend the HireRight Report is unreliable, pointing to a stipulated final judgment in a Federal Trade Commission enforcement action for failure to provide accurate reports. (Doc. 34 at 5-6; *see* Doc. 34-1).

4

Report does not qualify as a business record. (Doc. 34 at 9-11). Although the plaintiff has not responded to the defendants' arguments, the undersigned concludes the business record exception is the only potentially applicable exception. Because the HireRight Report is not authenticated, it does not qualify as a business record. FED. R. EVID. 803(6)(D); *Saunders v. Emory Healthcare, Inc.,* 360 F. App'x 110, 113 (11th Cir. 2010) (court properly struck unauthenticated exhibits at summary judgment). Accordingly, the HireRight Report constitutes inadmissible hearsay.

### III. FACTS

Paz-Plata obtained his commercial driver's license ("CDL") in California while living there in 2002 or 2003. (Doc. 31 at 2). Paz-Plata took the California CDL test twice in Spanish; he passed on his second attempt. (Doc. 32 at 6; Doc. 35 at 2). Prior to obtaining his CDL, Paz-Plata attended a truck driving school. (Doc. 31 at 2). Paz-Plata's CDL has never been revoked or suspended, and he has never failed a DOT inspection. (*Id.* at 2, 3). While living in California, Paz-Plata received two traffic tickets—one for speeding and one for failing to stop at scales. (*Id.* at 3). In 2011 or 2012, Paz-Plata moved to Georgia and obtained a Georgia CDL. (*Id.*). In Georgia, Paz-Plata worked for five or six months driving a box truck for a secondhand store. (*Id.*). Paz-Plata left that job to drive tractor-trailers for a company named CEI; he worked at CEI for two years. (*Id.*). While working

at CEI, Paz-Plata received two citations. The first citation was the result of an accident in which Paz-Plata backed a commercial vehicle into another vehicle, causing property damage but no injuries. (*Id.*). This was the only accident in which Paz-Plata had ever been involved—whether professionally or personally—prior to the accident giving rise to the instant lawsuit. (*Id.* at 4). The second citation was issued when trash escaped from the covered trailer of a CEI truck Paz-Plata was driving. (*Id.* at 3). These two citations were the only ones Paz-Plata received after moving to Georgia. (*Id.*).

Less than a month after losing his job at CEI—due to the backing accident—Paz-Plata submitted an application with Taylor Pallets, together with his Georgia CDL and a current medical examiner's certificate. (Doc. 31 at 4; Doc. 32 at 7, 25). Paz-Plata did not fill-out the application himself; he had an English-speaking friend complete the form. (Doc. 32 at 7). After an interview, Taylor Pallets hired Paz-Plata on October 8, 2013. (Doc. 31 at 4). It was Taylor Pallets' practice to obtain an applicant's Motor Vehicle Report ("MVR"), showing their driving history. (Doc. 32 at 7; Doc. 35 at 5). However, the decision-makers who hired and supervised Paz-Plata are no longer employed by Taylor Pallets. (Doc. 35 at 5). Accordingly, Taylor Pallets does not know what was done to check Paz-Plata's driving history at the time he was hired. (*Id.*). Paz-Plata did not provide Taylor Pallets an MVR or a list of prior employers. (Doc. 32 at 7-8). Likewise, Taylor

6

Pallets did not perform a criminal background check or subject Paz-Plata to drug screening prior to hiring him. (*Id.* at 8). Between his October 8, 2013 hiring at Taylor Pallets and the January 7, 2016 accident underlying this lawsuit, Paz-Plata was not involved in any traffic accidents and did not receive any traffic citations. (Doc. 31 at 5).

After hiring Paz-Plata, Taylor Pallets assigned another employee to ride along for one day to assess Paz-Plata's driving skills. (Doc. 31 at 4; Doc. 32 at 8). This was the only driving-related training Paz-Plata received. (Doc. 32 at 8). Taylor Pallets did not have a driver safety manual but occasionally held safety meetings for its drivers; Paz-Plata testified safety meetings were infrequent. (*Id.*; Doc. 31 at 4). While the owner of Taylor Pallets testified the company had a safety policy, no one at the company assured compliance with the policy. (Doc. 32 at 8). No one at Taylor Pallets told Paz-Plata he was subject to Federal Motor Carrier Safety Regulations; neither was he provided with a copy of applicable regulations. (*Id.* at 8-9). Paz-Plata testified he has never reviewed the Georgia CDL manual. (*Id.* at 9). Taylor Pallets did not provide drivers with CB Radios or cell phones, and Paz-Plata used his personal cell phone to keep in touch with the main office. (*Id.* at 9). If issues arose, Taylor Pallets did not provide a dedicated hotline; instead, drivers would call the main office number. (*Id.*). Taylor Pallets does not conduct internal investigations following accidents to determine if they

7

were preventable. (*Id.*).

On January 7, 2016, Paz-Plata drove a bobtail tractor[3] from Georgia to meet a Taylor Pallets tractor-trailer which was broken-down on the right shoulder of westbound I-20 near Talladega. (Doc. 31 at 5; Doc. 32 at 3). Paz-Plata intended to hitch the trailer to his tractor and haul it to its intended destination. (*See* Doc. 31 at 5). The bobtail tractor Paz-Plata drove that day was the same one he had been driving for the previous year; he performed a pre-trip inspection of the tractor before departing Georgia that morning. (*Id.*; *see* Doc. 32 at 4).

When Paz-Plata reached the disabled tractor-trailer, he pulled over in the right-hand emergency lane in front of the disabled tractor. (Doc. 31 at 5). The driver of the disabled tractor had already disconnected it from the trailer, but there was not enough space for Paz-Plata to pull between it and the trailer. (*Id.*). Accordingly, Paz-Plata instructed the other driver to move the disabled tractor forward to create more space between it and the trailer. (*Id.*). After the driver of the disabled tractor pulled forward, Paz-Plata walked behind the disabled tractor and determined there was enough space to pull his tractor in front of the trailer. (*Id.* 5-6). Paz-Plata testified he knew the maneuver would require him to slow below 40 miles per hour on the interstate, would impede the flow of traffic, was dangerous, and would require special precautions. (Doc. 32 at 4). Paz-Plata

---

[3] A tractor is "bobtailed" when it is driven without the trailer attached. (*See* Doc. 31 at 2, n.2).

testified the rear of the disabled tractor was eighty feet ahead of the front of the trailer. (Doc. 31 at 5-6). The plaintiff testified the disabled tractor and trailer were separated by less than the length of a bobtail tractor, although he could not say how long a bobtail tractor is. (*See id.* at 7).

Paz-Plata planned to circle back to pull between the trailer and the disabled tractor. (Doc. 31 at 6). To accomplish this, Paz-Plata drove his bobtail tractor west to the next exit, crossed over to eastbound I-20, and drove east to an exit where he could double-back. (*Id.*). Before re-entering westbound I-20, Paz-Plata turned on his hazard lights; he testified he engaged the hazard lights to signal that he was driving slowly and would be turning off the roadway. (*Id.*; *see* Doc. 32 at 4-5). Paz-Plata mistakenly thought engaging the hazard lights disabled the turn indicator lights but that the brake lights would still function. (Doc. 32 at 4). Paz-Plata had it backward; the turn indicators still function, but the hazard lights use the same bulbs as the brake lights, meaning the brake lights do not function when the hazard lights are on. (*Id.*). At the point where Paz-Plata re-entered I-20, there are three westbound lanes; the interstate narrowed to two lanes at some point before reaching the disabled tractor-trailer. (*See* Doc. 31 at 7).

It appears Paz-Plata entered westbound I-20 just ahead of the plaintiff, who was also traveling west; the plaintiff saw Paz-Plata enter the interstate with his hazard lights engaged, three miles or more before the accident site. (*See* Doc. 32 at

9

5; Doc. 31 at 7). The plaintiff testified he believed the hazard lights indicated Paz-Plata was "in a hurry." (Doc. 32 at 5). At some point prior to the accident, Paz-Plata was traveling in the middle westbound lane; once the interstate narrowed to two lanes, Paz-Plata was traveling in the righthand lane. (Doc. 31 at 7). The plaintiff testified traffic became congested where the interstate narrowed. (Doc. 32 at 5). As Paz-Plata approached the stranded trailer, the only vehicle he noticed behind him was the plaintiff's; he did not see any vehicles in the left lane and assumed the plaintiff would pass him on the left. (Doc. 31 at 6). As Paz-Plata began braking to pull into the emergency lane between the disabled tractor and trailer, he looked into his rearview mirror and did not see the plaintiff behind him. (*Id.*). Additionally, because Paz-Plata mistakenly believed the hazard lights disabled his turn signals, he did not turn on his right blinker to signal his impending turn. (Doc. 32 at 5). This, combined with the brake lights being overridden by the hazard lights, meant that Paz-Plata signaled neither his right turn nor his braking. (*Id.*). The only indicator lights engaged just prior to the accident were Paz-Plata's hazard lights, which had been on since he entered westbound I-20, miles earlier. (*Id.*).

The plaintiff could not estimate how fast Paz-Plata was traveling prior to the accident, although he did state both vehicles were going a "good bit" under the speed limit. (Doc. 31-5 at 7; *see* Doc. 31 at 7-8; Doc. 35 at 2). Paz-Plata estimated

he was going approximately 50 miles per hour before he started braking to enter the righthand emergency lane. (*See* Doc. 32 at 5). When Paz-Plata reached the trailer, he turned into the emergency lane between it and the disabled tractor; he estimated he was traveling about 40 miles per hour when he began pulling into the emergency lane. (*Id.*; *see* Doc. 31 at 8). However, Paz-Plata did not have enough space to complete the maneuver, leaving the bobtail tractor's rear wheels protruding into the righthand travel lane. (Doc. 31 at 8). The plaintiff testified the left lane was occupied by other vehicles so he could not swerve to avoid the collision. (Doc. 31-5 at 8). Instead, the plaintiff braked hard and skidded in an attempt to avoid colliding with the bobtail tractor. (Doc. 32 at 6). Paz-Plata was stopped when the front, passenger-side of the plaintiff's vehicle struck the rear wheels of the bob-tail tractor; the plaintiff could not estimate how fast he was traveling when the accident occurred. (Doc. 31 at 8). Contemporaneously with the initial collision, another vehicle, driven by a non-party, struck the plaintiff's vehicle from behind. (*Id.*). The plaintiff injured his neck and left shoulder and has undergone four surgeries as a result of the accident. (Doc. 32 at 6).

Following the accident, Paz-Plata continued to work for Taylor Pallets as normal; he did not meet with anybody from Taylor Pallets, receive any training, or fill out any reports based on the accident. (Doc. 31-1 at 29; Doc. 33-1 at 30). Paz-Plata continued working for Taylor Pallets until September 2016, when he quit to

buy his own truck. (Doc. 31-1 at 16; Doc. 33-1 at 17). In October 2016, Paz-Plata returned as a driver for CEI, although he now drives his own truck. (Doc. 31-1 at 16; Doc. 33-1 at 17).

## IV. DISCUSSION

The defendant moves for summary judgment on the plaintiff's claims for wantonness and negligent training and supervision. (Doc. 31 at 1-2). Substantive Alabama law governs these claims, which are addressed in turn.

### A. <u>**Wantonness**</u>

Alabama law defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." ALA. CODE § 6–11–20(b)(3). As explained by the Alabama Pattern Jury Instructions, a defendant's conduct is wanton if he "consciously acts or fails to act with a reckless or conscious disregard of the rights or safety of others, and [] is aware that harm will likely or probably result." 2 Ala. Pattern Jury Instr. Civ. § 29.00 (3d ed.). As explained by the Alabama Supreme Court:

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury.

*Carter v. Treadway Trucking, Inc.,* 611 So. 2d 1034, 1035 (Ala. 1992) (quotation

12

marks omitted) (*overruled on other grounds by Robertson v. Gaddy Electrical and Plumbing, LLC*, 53 So. 3d 75 (Ala. 2010)). Of course, a plaintiff claiming wantonness need not prove the defendant had a "specific design or intent to injure" him. *Joseph v. Staggs,* 519 So. 2d 952 (Ala. 1988). As this court has noted, in the context of a traffic accident, a plaintiff must show the defendant was driving "in a manner likely to result in injury. . . . However, an error in judgment is insufficient to demonstrate that an alleged tortfeasor has acted in a manner likely to result in injury." *Stephens v. Snow*, No. 16-442-SGC, Doc. 24 at 1 (N.D. Ala. *entered* Sept. 25, 2017).

"Wantonness is a question of fact for the jury, unless there is a total lack of substantial evidence from which a jury could reasonably infer wantonness." *Cash v. Caldwell,* 603 So. 2d 1001, 1003 (Ala. 1992). "The most crucial element of wantonness is knowledge, and while that element need not be shown by direct evidence it may be made to appear by showing circumstances from which the fact of knowledge is a legitimate inference . . . it may not be left to the conjecture or speculation of the jury." *Roberts v. Brown,* 384 So. 2d 1047, 1048 (Ala. 1980).

Considering the facts of this case under the summary judgment standard, the plaintiff has not presented substantial evidence from which a jury could infer Paz-Plata was anything more than negligent. The plaintiff relies on Paz-Plata's failure to use his turn signal to indicate he was entering the exit lane, coupled with his

superior knowledge of his planned maneuver. (Doc. 32 at 15-16). However, the plaintiff has submitted no evidence to show Paz-Plata consciously chose not to signal his intentions to slow down and turn. Indeed, Paz-Plata engaged his emergency lights with the intention of warning other drivers that he would be slowing and pulling into the emergency lane. Paz-Plata mistakenly believed: (1) activating his emergency lights disabled his turn indicator lights; and (2) his brake lights were functioning. Accordingly, the plaintiff has not shown that Paz-Plata consciously chose not to signal his intentions. *Cf. Vines v. Cook*, No. 15-0111, 2015 WL 8328675, at *4 (S.D. Ala. Dec. 8, 2015) (granting summary judgment on wantonness claim where plaintiffs failed to submit evidence semi driver consciously ignored warning signal, knew traffic light was turning red, and chose to run the red light). Instead, the plaintiff's evidence—under the summary judgment standard—shows a genuine issue of material fact as to whether Paz-Plata acted negligently in: failing to understand which indicator lights were affected by the emergency lights; choosing to engage his hazard lights as early as he did; failing to use his turn indicator; and failing to ensure he had enough space between the disabled tractor and trailer to completely remove his bobtail tractor from the travel lane to the emergency lane. Even assuming—as plaintiff testified—less than a bobtail tractor-length separated the back of the disabled tractor and the front of the trailer, this constitutes no more than an error in Paz-Plata's judgment.

These summary judgment facts do not constitute substantial evidence of wantonness. *See Vines*, 2015 WL 8328675 at *5 ("A jury would need a factual basis that [the defendant] saw on-coming traffic and still tried to beat the red light. . . . Simply put, the fact that [the defendant] saw the green light, then moved around the truck and proceeded through the intersection without realizing that the light had turned red does not prove that he knew, or recklessly disregarded, that he would likely harm others on the road.").

Additionally, merely violating another driver's right-of-way is insufficient to show wantonness. *See, e.g., Thedford v. Payne*, 813 So. 2d 905, 911 (Ala. 2001) (rear-end collision caused by failure to look ahead not wanton); *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996) (accident caused when driver entered intersection despite having obstructed view of oncoming traffic not wanton); *George v. Champion Ins. Co.*, 591 So. 2d 852, 853 (Ala. 1991) (affirming summary judgment on wantonness claim where defendant was not watching the road because she was talking with backseat passengers, causing her to run a red light); *Partridge v. Miller*, 553 So. 2d 585, 587 (Ala. 1989) (affirming directed verdict on wantonness where defendant turned in front of plaintiff, who had the right-of-way).

For the foregoing reasons, the plaintiff has not submitted substantial evidence of wantonness. Because the defendants are entitled to summary

15

judgment on the wantonness claim, it is not necessary to address the parties' arguments regarding whether the self-destructive behavior presumption applies.

### B. Negligent/Wanton Hiring, Entrustment, Retention, Supervision

In Alabama, claims for negligent hiring, supervision, retention, and entrustment all share a common element: the plaintiff must show the tortfeasor employee was incompetent. *Halford v. Alamo Rent–A–Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005); *Johnson v. Brunswick Riverview Club, Inc.*, 39 So. 3d 132, 140 (Ala. 2009). The same is true regarding similar claims premised on wantonness. *See Vines*, 2015 WL 8328675, at *6; *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985). In Alabama, incompetence is the "state or fact of being unable or unqualified to do something." *Halford*, 921 So. 2d at 415. Alabama courts measure a driver's competence "by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Id.* at 414-15. Additionally, "[n]egligence is not synonymous with incompetency. The most competent may be negligent. . . . *But one who is habitually negligent may on that account be incompetent.*" *Pritchett v. ICN Medical Alliance, Inc.*, 938 So. 2d 933, 941 (Ala. 2006) (alteration incorporated).

Paz-Plata's driving history does not demonstrate that he was incompetent. For summary judgment purposes, he received four traffic tickets and was involved in one traffic accident in the seven years prior to the January 2016 accident made

16

the basis of this lawsuit; all of these occurred prior to being hired by Taylor Pallets, more than two years earlier. However, a driver need not have a pristine driving record to be found competent. Indeed, courts applying Alabama law have granted summary judgment—on the basis of plaintiffs' failure to show incompetence—where tortfeasors had driving records similar to Paz-Plata's. *Askew v. R&L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (two moving violations and four minor accidents over previous nine years); *Vines*, 2015 WL 8328675, at *6 (one speeding ticket and one accident over previous four years); *Lanham v. Gnewuch*, No. 13-1358-VEH, 2015 WL 3966480, *8-9 (N.D. Ala. Jun. 30, 2015) (two preventable accidents in previous two years); *Thedford*, 813 So. 2d at 912 (one similar accident three months prior); *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 52 (Ala. 1995) (two speeding tickets and a suspended DUI charge over ten years).

Moreover, by the time of the accident at issue, Paz-Plata had demonstrated his competence by driving a Taylor Pallets truck without incident for more than two years. Likewise, Paz-Plata had a valid Georgia CDL which had never been suspended or revoked. All of these facts militate against finding Paz-Plata was an incompetent driver. *See Vines*, 2015 WL 8328675 at *5 (noting defendant had several years of experience driving log trucks and had a valid, never-revoked CDL). Finally, to the extent the plaintiff suggests Paz-Plata's inability to speak

English yields him incompetent, this argument fails. There is simply no evidence, even under the summary judgment standard, to suggest that Paz-Plata's inability to speak English contributed to the accident in this case. *See id.* (rejecting as irrelevant argument that logging truck was overweight where there was no indication that the vehicle's weight contributed to the accident).

For the foregoing reasons, there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law on the plaintiff's claims for negligent and/or wanton hiring, supervision, and entrustment.

## V. CONCLUSION

For the foregoing reasons, there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law as to claims for wantonness and negligent and/or wanton hiring, supervision, and entrustment. Accordingly, the defendants' partial motion for summary judgment is **GRANTED**. (Doc. 30).

**DONE** this 4th day of March, 2020.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE